## In re JOHNSON.

(District Court, N. D. Georgia. January 11, 1918.)

1. BANKRUPTCY ⟷467—REFEREE'S DECISION—REVIEW.

A finding of fact by a referee in bankruptcy, who heard the witnesses, will not be disturbed, unless clearly and manifestly erroneous.

2. BANKRUPTCY ⟷396(5)—HOMESTEAD EXEMPTION.

Under the Georgia laws, a bankrupt cannot be denied a homestead in a stock of goods because the property is subject to taxes and purchase money, though the property, after being set aside as a homestead, is subject to payment of purchase money.

In Bankruptcy. In the matter of the bankruptcy of J. W. Johnson. The bankrupt's application for the allowance of a homestead exemption was granted by the referee over objections, and objecting creditors petition for review. Affirmed.

Moon & Davis, of La Grange, Ga., for objector.
Meadors & Wyatt, of La Grange, Ga., for bankrupt.

NEWMAN, District Judge. This is an application by the bankrupt for the exemption of a stock of goods in La Grange, Ga. The opinion of the referee and his decision allowing the homestead, which I am asked to review, is as follows:

"Objections to the Homestead Filed by the La Grange Grocery Company.

"All the objections as to the bankrupt's not being entitled to homestead upon goods not paid for, and as to his right to claim more as homestead than he put into the business, I overrule, as not being sufficient in law.

"I have carefully examined the facts upon the objections charging that bankrupt had not made a full disclosure of all his assets, but had concealed some of them, and cannot reach the conclusion that the evidence submitted authorizes me to sustain the charge of fraud, and therefore I find that he is entitled to the property set off to him by the trustee.

"A statement agreed upon by counsel for objectors and bankrupt, showing the sums paid out by bankrupt and then a cashbook kept by bankrupt, showing what he had taken in for months before he filed his petition in bankruptcy, and up to a week or ten days before said filing, were offered in evidence. This register of the cash taken in by day up to within a few days before the filing of said petition, and then the bills showing how he had paid same out, as shown by said files and statement, rebut the idea of fraud. It seems to me that, if he should have intended to defraud his creditors, he would not have registered cash received so near to the time of filing said petition, and then paid cash out as shown by said statement.

"Nor do I think the discrepancy between the goods on hand at bankruptcy and what witnesses swore were on hand a few months before forces a finding of fraud, because some witnesses swore that there were not more than half what those other witnesses said there were, and especially when you consider the great number of goods sold to bring in as much cash as said cashbook shows was taken in. There is no evidence that he took any of these goods out of the store.

"All the values put upon the goods were only estimates. No invoice or inventory was taken. I do not think I should find fraud upon inference based upon the opinions of witnesses, when they were contradicted by other witnesses.

⟷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"The statement and bills paid do not go back to September, 1916, and the brief of objector's counsel goes back to September 22, 1916, and that makes $502 difference against the bankrupt, as shown by book and statement.

"The bankrupt and his counsel, months after his store had been taken possession of by trustee, went into same and found the bills paid as set out in said statement. Said book was found in the same way. When bankrupt turned over his store to the court, he turned over everything in same, bills, invoices, checks, and books. If there are any in said store now, the trustee should have presented them to the court.

"Said cashbooks show that in January, February, and March, 1917, he received $2,809.04, and said statement shows that bankrupt paid to receipted bills of merchants some $2,400 or $2,500, and the statement shows that he paid for two months' rent, $55, clerk's hire, $80, expenses of bankruptcy proceedings, filing fee, $35, attorney's fee, $75. There were other small items, amounting to some $75, and then bankrupt says various sums were paid for country produce bought from wagons, of which no entry was made. This takes no account of family expenses.

"It appears that he kept cashbook to within a few days of time he went into bankruptcy, and that he paid out closely in January, February, and March, 1917, what he took in. For this reason I do not think any intention of fraud, much less actual fraud, was shown.

"I therefore find that bankrupt is entitled to his homestead, hereby overruling all objections to same. Counsel for objectors shall have till the 10th day of August, 1917, to file petition for review."

[1] The decision of the referee is, I think, sufficiently supported by the evidence. As I have said in so many cases, the referee had the witnesses before him, he saw them and heard them examined, and reached his conclusion as to the facts. I am not authorized to differ with such conclusion, unless it is clearly and manifestly erroneous. It is not so in my opinion.

[2] I have heretofore held, following the decisions of the Supreme Court of the state, in J. E. Maynard & Co. (D. C.) 183 Fed. 823, as to the question made in this case as to the fact that some portion of this stock is subject to claims for the purchase money, as follows:

"It would seem, therefore, that the scheme of the constitutional provision is that the homestead should be set apart, and that, after being so set apart, it is subject to the taxes, purchase money, etc. There are a number of decisions by the Supreme Court of the state on the question as to whether or not the ordinary, in passing upon the exemption under the state law, has any jurisdiction to entertain an objection on the ground that the purchase money has not been paid. These opinions are all cited and discussed, and a conclusion reached, in the opinion of Judge Lumpkin, for the Supreme Court, in Dix v. Dix, 132 Ga. 630, 64 S. E. 790."

It is clear, therefore, that so far as any portion of this stock, set apart as an exemption to the bankrupt, is subject to purchase money, the rights of the creditors can be readily enforced in the proceedings said to be now pending in the state court.

As to the bankrupt's failure to make a full and fair disclosure of his property, as required by section 3380, Park's Code of Georgia (section 2830, Code of 1910), I think the decision of the referee is sufficiently supported by the evidence taken before him.

I think the other questions made here by the petition for review are also sufficiently supported by the evidence to justify the court, if not to require that the action of the referee be approved.

The action of the referee in this case is approved, but the stock of goods in question should be held, at least until the officer appointed

by the state court shall have an opportunity to take possession of it for the purpose of determining what part thereof is subject to the purchase money; and it is ordered accordingly.